FILED
U.S. District Court
District of Kansas
10/30/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MICHELLE JEAN HINTZ,**

**Plaintiff,**

**v.** **CASE NO. 26-3217-JWL**

**TIMBERLY DUNHAM,**
**et al.,**

**Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Michelle Jean Hintz is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein. Plaintiff is also given the opportunity to file a second amended complaint to cure the deficiencies.

### I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Osage County Jail in Lyndon, Kansas ("OCJ"). The Court granted Plaintiff leave to proceed in forma pauperis. On August 21, 2026, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") ordering Plaintiff to show good cause why her Complaint should not be dismissed or to file an amended complaint to cure the deficiencies noted in the MOSC. Plaintiff has filed an Amended Complaint (Doc. 6). The Court's screening standards are set forth in the MOSC.

As Count I of her Amended Complaint, Plaintiff claims that her medication was given to her late on May 6, 12, and 16, 2026. (Doc. 6, at 3.) Plaintiff claims that she started taking the hypothyroid medication on May 5, and needed to take her medication thirty minutes prior to

breakfast. *Id*. at 6. She claims that her medication came with her breakfast tray, and because they only have their trays for thirty minutes, she was unable to eat her breakfast on those three dates. *Id*. at 6, 8. She also claims that her medicated shampoo was not given to her on June 12, 2026. *Id*. at 3.

As Count II, Plaintiff alleges retaliation. *Id*. at 3. Plaintiff claims that after she was given her medication late, she wrote a letter to Sgt. Dunham's supervisor informing them of this and other issues. *Id*. at 8. Plaintiff claims that Dunham told Plaintiff that a report could be made but that nothing would come of it. *Id*. at 8. Plaintiff claims that she was removed from general population on May 16, 2026, without conversation and without receiving a disciplinary report. *Id*. Plaintiff claims that Sgt. Dunham had her moved, and when asked why Sgt. Dunham responded that her boss knows what she says and does and is okay with it. *Id*. at 6. Plaintiff claims that Sgt. Dunham told Plaintiff that she knew about Plaintiff's letter, she talked to other detainees about Plaintiff's letter, and it appeared that Dunham was trying to cause issues with Plaintiff and the other detainees. *Id*. at 8–9. Plaintiff claims that she repeatedly asked for a shower while in segregation but never got one. *Id*. at 9. Plaintiff claims that on one occasion Dunham commented that Plaintiff was suing her after all the times Dunham was there for Plaintiff when Plaintiff needed mental health talks "or to deal with the Stryker shit." *Id*. at 9. Plaintiff claims that this made her feel uneasy and unsafe. *Id*. Plaintiff claims that all of this makes it appear that Dunham has a personal issue with Plaintiff and is retaliating. *Id*.

As Count III, Plaintiff claims that for three months in a row she was not given feminine hygiene products in a timely manner, causing her to bleed through her clothing. *Id*. at 4, 6–7. She claims that this happened after lockdown and she had to wait hours. *Id*. at 7–8.

Plaintiff names as defendants Sgt. Timberly Dunham and Undersheriff Scott Brenner. For relief, Plaintiff seeks $1,200,000.00 in damages due to her having "worse migraines happen along with getting sick and . . . attending mental health for trauma caused by this." *Id*. at 5.

## II. DISCUSSION

### 1. Medication

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.[1] "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong to state an Eighth Amendment violation. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must*

[1] Although it is unclear whether Plaintiff is a pretrial detainee, the same Eighth Amendment standard applies to pretrial detainees. "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).

*also draw the inference*." *Farmer*, 511 U.S. at 837 (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The Court found in the MOSC that Plaintiff failed to allege that she suffered substantial harm as a result of the delay in receiving her medication on the three occasions. Her Amended Complaint fails to cure this deficiency. Plaintiff does not allege that she was denied medication, but rather claims that there was a delay in receiving her medication prior to her meal on three occasions in May 2026. Plaintiff does not allege that she suffered any damage from the delay, but argues that she had to skip her meal to receive the full effect from the medication. Plaintiff filed her Amended Complaint on September 28, 2026, and she argues that the delays happened in May 2026, right after she started her new prescription. Plaintiff's claims suggest, at most, negligence.

The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). Plaintiff should show good cause why her medical claim in Count I should not be dismissed for failure to state a claim.

**2. Conditions of Confinement**

As Count III, Plaintiff claims that for three months in a row she had to wait several hours before receiving feminine hygiene products, causing her to bleed through her clothing. The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle*, 429 U.S. at 103. The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to

which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted).

The denial of feminine hygiene products can rise to the level of a constitutional violation depending on the circumstances. *See Borden v. Fort Bend Cnty, Texas*, 2019 WL 6344473, at n.2 (S.D. Tex. 2019) (citing *see, e.g.*, *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement."); *Newman v. State of Ala.*, 559 F.2d 283, 291 (5th Cir. 1977) ("If the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of cruel and unusual punishment, that ends its obligations under Amendment Eight."), *reversed in part on Eleventh Amendment grounds, Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057 (1978); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) (finding that summary judgment was not appropriate when an officer admitted to not providing a detainee who had "'blood all over her legs'" with a sanitary napkin); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1289 (S.D. W.Va. 1981) ("The failure to regularly provide prisoners with clean bedding, towels, clothing and sanitary mattresses, as well as toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions."); *but see Brown v. Hamilton, Twp. Police Dep't Mercer Cty., N.J.*, 547 F. App'x 96, 98 (3d Cir. 2013) (unpublished) ("[D]efendants' failure to provide needed sanitary napkins for a few hours may have resulted in discomfort, [but] it was de minimis, and certainly not sufficiently serious to implicate [the plaintiff's] constitutional rights.");

*Sherwin v. Camden City*, No. 16-cv-8665, 2018 WL 2383151, at *5 (D.N.J. May 24, 2018) ("Plaintiff has not offered any facts demonstrating how one day's denial of soap, toothpaste, or sanitary napkins jeopardized her health or caused her injuries. While the Court agrees that the lack of these items for a day is unpleasant or even embarrassing, this does not rise to the level of a constitutional violation. The Complaint does not plausibly suggest that conditions as Plaintiff describes them were imposed as 'punishment.' "); *Russo v. Cty. of Warren*, No. 1:12-CV-1616 (FJS/CFH), 2015 WL 7738043, at *8 (N.D.N.Y. Dec. 1, 2015) (agreeing that "[f]ailure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional challenge" but finding, at the summary judgment stage of an Eighth Amendment claim, that a denial of a change of clothes, use of sanitary napkins, a shower or towel for 48 hours did "not rise to the level of an unreasonable risk of serious damage to Plaintiff's health")). Courts have held that single instances of hours-long delays are insufficient. *See Semelbauer v. Muskegon Cnty.*, 2015 WL 9906265, at *9–10 (W.D. Mich. 2015); *Ball v. Craver*, 2012 WL 1005040, at *13 (M.D. Pa. 2012), *report and recommendation adopted* 2012 WL 1005033 (M.D. Pa. 2012).

Plaintiff fails to provide sufficient facts in her Amended Complaint. Plaintiff does not indicate when she was denied feminine hygiene products, who she requested the products from, or who denied her requests. She indicates that this happened after lockdown, but she fails to name a defendant in this count or to indicate when she requested products or who denied any request that she made.

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.

*Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.* Plaintiff has failed to name a staff member responsible for the delay in receiving her feminine hygiene products and has failed to show that an official was deliberately indifferent to any request she made for the products. Plaintiff should show good cause why her claim in Count III should not be dismissed for failure to state a claim.

**3. Retaliation**

Plaintiff claims that she was retaliated against when Sgt. Dunham had her removed from general population. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of

constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). "[M]ere allegations of retaliation, without more, are insufficient to show a retaliatory motive." *Brown v. Flowers*, 2023 WL 6861761, at *11 (10th Cir. 2023) (unpublished) (citation omitted).

Plaintiff has failed to allege specific facts regarding her removal from general population. She claims that Dunham had her removed, but she does not indicate whether she was placed in administrative or disciplinary segregation, how long she was in segregation, or what restrictions she was subjected to after her move. She merely claims that she was denied a shower in segregation.[2] (Doc. 6, at 9.) She has failed to show that she suffered an injury that would chill a person of ordinary firmness from continuing to engage in protected activity. "The retaliation claim must allege that the retaliatory action was sufficient to chill an ordinary person from exercising his or her constitutional rights." *Shields v. Cline*, 829 F. App'x 321, 325 (10th Cir. 2020) (unpublished) (finding insufficient plaintiff's allegation that he was moved to a "more restrictive" cellhouse without providing any further detail about the additional restrictions) (citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015)). An allegation that a plaintiff was moved to more restrictive housing, "without more, is not enough to allege sufficient harm to state a First Amendment retaliation claim." *Id.* Plaintiff should show good cause why her retaliation claim should not be dismissed for failure to state a claim.

---

[2] In her original Complaint, Plaintiff stated that she went without a shower all weekend. (Doc. 1–1, at 8.) Elsewhere she claims that she requested a shower on June 12, but did not receive one until June 13. *Id.* at 9 (stating that "[o]ver the weekend of June 12, 2026, I NEVER received my medicated shampoo . . . [o]n June 12, 2026, I asked for a shower Dunham told me yes but I did not receive a shower until June 13, 2026 . . .").

**4. Defendant Scott Brenner**

Plaintiff names Undersheriff Scott Brenner as a defendant, but fails to mention him in the body of her Amended Complaint. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the

defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiff must show good cause why her claims against Defendant Brenner should not be dismissed.

**5. Request for Relief**

Plaintiff seeks compensatory damages. Any request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Id.* (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

Plaintiff seeks $1,200,000.00 in damages due to her having "worse migraines happen along with getting sick and . . . attending mental health for trauma caused by this." (Doc. 6, at 5.) "The assertion that alleged violations resulted in emotional trauma which manifested itself in symptoms

such as stress, headaches, sleeplessness, mood swings, fear, and worry does not satisfy the statutory prerequisite that plaintiff make a showing of a prior physical injury from the defendants' conduct." *Henry v. Goddard*, 2009 WL 3711596, at *8 (D. Kan. 2009); *see also Crump v. Johnson Cnty. Bd. of Comm'rs.*, 2024 WL 5046299, at *6 (D. Kan. 2024) (finding "thoughts of suicide, extreme depression, anxiety," as well as "severe stomach cramps, migraines, muscle cramps and loss of physical movement, exhaustion" insufficient). Such allegations are insufficient to meet the physical injury requirement of § 1997e(e). *Dexter v. Lucke*, 2024 WL 4527263, at *3 (D. Kan. 2024) (citing *Hall v. Elbe*, No. 18-CV-01056-PAB-NRN, 2022 WL 16855691, at *13 (D. Colo. Nov. 9, 2022), citing *see, e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming *sua sponte* dismissal with prejudice despite prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after disclosure of his medical status because the language and purpose of § 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress"); *Cooksey v. Hennessey*, 2007 WL 2790365, *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as 'a prior showing of physical injury.'"); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 905 (N.D. Cal. 2004) (same); *Cannon v. Burkybile*, 2000 WL 1409852, *6 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress, and stomach anxiety insufficient to meet the physical injury requirement under § 1997e(e)); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and severe headaches caused by emotional distress not a "physical injury" under the PLRA). Plaintiff should show good cause why her request for money damages should not be dismissed.

**6. Exhaustion**

Plaintiff stated "no" to the question on the Amended Complaint asking if she has sought

informal or formal relief from the appropriate administrative officials regarding her claims. *See* Doc. 6, at 5. Plaintiff did not provide an explanation in the space provided to briefly explain why administrative relief was not sought. *Id*. In her original Complaint, she also answered "no," but in the explanation section wrote "Administration will not speak with me." (Doc. 1, at 5.)

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and

a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

**III. Initial Partial Filing Fee**

On July 13, 2026, the Court entered an Order granting Plaintiff leave to proceed in forma pauperis and assessing an initial partial filing fee of $4.00. (Doc. 4.) The initial partial filing fee was due on or before August 12, 2026. *Id.* Plaintiff was expressly cautioned that: "Any objection to this order must be filed on or before the date payment is due. The failure to pay the fee as directed may result in the dismissal of this matter without further notice." *Id.* The Court has yet to receive payment of the initial partial filing fee and Plaintiff has not moved for an extension of time in which to pay the initial partial filing fee.

Normally, the Court would dismiss this matter without further prior notice to Plaintiff because she has failed to comply with a court order. *See* Fed. R. Civ. P. 41(b); *see also Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (noting that Rule 41(b) "has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure . . . to comply with the . . . court's orders"). However, the Court will grant Plaintiff an opportunity to show good cause why this matter should not be dismissed without prejudice for failure to submit the initial partial filing fee.

**IV. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the second amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (26-3217-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient

additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 12, 2026,** in which to either pay the initial partial filing fee of $4.00 or submit to the Court a written response to this order showing good cause why this matter should not be dismissed for failure to submit the fee. The failure to comply with this order will result in the dismissal of this matter without further prior notice to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **November 30, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **November 30, 2026**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated October 30, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**